# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JONATHAN EDISON,

        Plaintiff,

vs.

NORTHVILLE TOWNSHIP,
a municipal corporation, POLICE
OFFICER BEN SELLENRAAD,
in his professional and individual
capacities, FADIE JAMIL KADAF,
and JEAHAD KADAF,

        Defendants,

Case No. 5:23-cv-11741
Hon. Judith E. Levy
Mag. Judge Anthony P. Patti

---

Thomas H. Randolph, III (P53563)
RANDOLPH LAW GROUP, P.C.
*Attorney for Plaintiff*
6330 East Jefferson Avenue
Detroit, MI 48207
(248) 851-1222 (Office)
(248) 254-6534 (Fax)
thomas@randolphlawgroup.com

James R. Acho (P62175)
Matthew C. Wayne (P80542)
CUMMINGS MCCLOREY DAVIS
& ACHO
*Attorneys for Defendants Northville
and Sellenraad*
17436 College Parkway, 3rd Floor
Livonia, MI 48152
(734) 261-3400
jacho@cmda-law.com
mwayne@cmda-law.com

Gerald J. Gleeson, II (P53568)
Erica L. Jilek (P84498)
Sydney G. Rohlicek (P85655)
MILLER, CANFIELD, PADDOCK
& STONE,  P.L.C.
*Attorneys for Defendants Fadie Kadaf
and Jeahad Kadaf*
840 W. Long Lake Rd., Suite 150
Troy, MI 48098
(248) 879-2000
gleeson@millercanfield.com
jilek@millercanfield.com
rohlicek@millercanfield.com

**DEFENDANTS FADIE KADAF AND JEAHAD KADAF'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**ORAL ARGUMENT REQUESTED**

Defendants Fadie and Jeahad Kadaf (collectively the "Kadaf Defendants"), by and through their attorneys, Miller, Canfield, Paddock, and Stone, hereby motion to dismiss Count IV and V of Plaintiff's Complaint, in lieu of an answer, under Federal Rule of Civil Procedure 12(b)(6).

Pursuant to Local Rule 7.1(d), counsel for the Kadaf Defendants sought concurrence from Plaintiff's counsel, which was expressly rejected on September 3, 2023, making this motion necessary.

WHEREFORE, for the reasons stated more fully in the accompanying brief, the Kadaf Defendants ask that the Court grant this motion and dismiss the complaint against the Kadaf Defendants in its entirety, and award any and all other relief to the Kadaf Defendants that the Court deems appropriate under the circumstance.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK & STONE, P.L.C.

By: ___/s/Gerald J. Gleeson, II_____

Gerald J. Gleeson, II (P53568)
Erica L. Jilek (P84498)
Sydney G. Rohlicek (P85655)
MILLER, CANFIELD, PADDOCK & STONE,  P.L.C.
Attorneys for Defendants Fadie Kadaf and Jeahad Kadaf
840 W. Long Lake Rd., Suite 150 Troy, MI 48098
(248) 879-2000
gleeson@millercanfield.com
jilek@millercanfield.com
rohlicek@millercanfield.com

Dated: September 5, 2023

3

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on, September 5, 2023, she served the foregoing document via the court's ECF filing system, which will send notification of such filing to all counsel of record.

/s/Sydney G. Rohlicek
Sydney G. Rohlicek

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JONATHAN EDISON,

              Plaintiff,

vs.

NORTHVILLE TOWNSHIP,
a municipal corporation, POLICE
OFFICER BEN SELLENRAAD,
in his professional and individual
capacities, FADIE JAMIL KADAF,
and JEAHAD KADAF,

              Defendants,

Case No. 5:23-cv-11741
Hon. Judith E. Levy
Mag. Judge Anthony P. Patti

---

Thomas H. Randolph, III (P53563)
RANDOLPH LAW GROUP, P.C.
*Attorney for Plaintiff*
6330 East Jefferson Avenue
Detroit, MI 48207
(248) 851-1222 (Office)
(248) 254-6534 (Fax)
thomas@randolphlawgroup.com

James R. Acho (P62175)
Matthew C. Wayne (P80542)
CUMMINGS MCCLOREY DAVIS
& ACHO
*Attorneys for Defendants Northville and Sellenraad*
17436 College Parkway, 3rd Floor
Livonia, MI 48152
(734) 261-3400
jacho@cmda-law.com
mwayne@cmda-law.com

Gerald J. Gleeson, II (P53568)
Erica L. Jilek (P84498)
Sydney G. Rohlicek (P85655)
MILLER, CANFIELD, PADDOCK
& STONE, P.L.C.
*Attorneys for Defendants Fadie Kadaf and Jeahad Kadaf*
840 W. Long Lake Rd., Suite 150
Troy, MI 48098
(248) 879-2000
gleeson@millercanfield.com
jilek@millercanfield.com
rohlicek@millercanfield.com

## BRIEF IN SUPPORT OF DEFENDANTS FADIE AND JEAHAD KADAF'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

I. INTRODUCTION ............................................................................. 1

II. STATEMENT OF FACTS................................................................. 2

III. ARGUMENT .................................................................................. 5

    A. Standard of Review................................................................... 5

    B. Plaintiff Fails to State a Viable Civil Conspiracy Claim (Count IV) ........ 6

    C. Plaintiff Fails to State a Viable Defamation Claim (Count V)............... 10

IV. CONCLUSION............................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ...................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................5, 6

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
  528 F.3d 426 (6th Cir. 2008) .................................................................3

*Brintley v. St. Mary Mercy Hosp.*,
  904 F. Supp. 2d 699 (E.D. Mich. 2012), *aff'd*, 545 F. App'x 484
  (6th Cir. 2013) ......................................................................................10

*Case v. Hunt*,
  2019 WL 1780643 (Mich. Ct. App. Apr. 23, 2019) .........................16

*Center for Bio-Ethical Reform v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) .................................................................6

*Couch v. Schultz*,
  193 Mich. App. 292, 483 N.W.2d 684 (1992) ....................................8

*Detroit Will Breathe v. City of Detroit*,
  524 F. Supp. 3d 704 (E.D. Mich. 2021) ..............................................9

*Eddington v. Torrez*,
  311 Mich. App. 198 (2015) ...........................................................14, 15

*Est. of Kelly v. Peet*,
  2016 WL 757537 (Mich. Ct. App. Feb. 25, 2016) ...........................15

*Fieger v. Cox*,
  524 F.3d 770 (6th Cir. 2008) .................................................................7

*Fremont Reorganizing Corp. v. Duke*,
  811 F. Supp. 2d 1323 (E.D. Mich. 2011) .............................................7

*Garretson v. City of Madison Heights*,
    407 F.3d 789 (6th Cir. 2005) .................................................................8

*Ghaith v. Rauschenberger*,
    2010 WL 4982795 (E.D. Mich. Dec. 2, 2010) ...................................10

*Gilliam v. Ordiway*,
    147 F. Supp. 3d 664 (E.D. Mich. 2015) .............................................12

*Gutierrez v. Lynch*,
    826 F.2d 1534 (6th Cir. 1987) .............................................................7

*Guzall v. Michigan State Univ.*,
    2022 WL 4586568 (Mich. Ct. App. Sept. 29, 2022) .........................15

*Heike v. Guevara*,
    654 F. Supp. 2d 658 (E.D. Mich. 2009) .......................................12, 16

*Hope-Jackson v. Washington*,
    311 Mich. App. 602, 877 N.W.2d 736 (2015)....................................14

*Ireland v. Edwards*,
    230 Mich. App. 607 (1998) .................................................................14

*Kamate v. Henry*,
    2019 WL 4934513 (E.D. Mich. Oct. 7, 2019)....................................10

*Life For Relief & Dev. v. Charter One Bank*,
    2013 WL 3810255 (E.D. Mich. July 23, 2013).....................................5

*Liogghio v. Salem*,
    2016 WL 4191742 (E.D. Mich. Aug. 9, 2016).......................................9

*Marks One Car Rental, Inc. v. Auto Club Grp. Ins. Co.*,
    761 F. App'x 516 (6th Cir. 2019).........................................................12

*Michigan Microtech, Inc. v. Federated Publications, Inc.*,
    187 Mich. App. 178, 466 N.W.2d 717 (1991).....................................16

*Nehls v. Hillsdale College*,
    65 Fed.Appx. 984 (6th Cir.2003).........................................................12

*New Albany Tractor v. Louisville Tractor*,
    650 F.3d 1046 (6th Cir. 2011) ...............................................................5

*Nichols v. Moore,*
477 F.3d 396 (6th Cir. 2007) ....................................................................12, 13

*Palmer v. Allen,*
2016 WL 3405872 (E.D. Mich. June 21, 2016) .........................................9

*Petroleum Enhancer, LLC v. Woodward,*
690 F.3d 757 (6th Cir. 2012) .....................................................................6

*Puckett v. Lexington-Fayette Urb. Cnty. Gov't,*
833 F.3d 590 (6th Cir. 2016) .....................................................................5

*Roche Diagnostics Corp. v. Shaya,*
427 F. Supp. 3d 905 (E.D. Mich. 2019) ....................................................7

*Roche v. Blair,*
305 Mich. 608 (1943) ................................................................................6

*Ryniewicz v. Clarivate Analytics,*
803 F. App'x 858 (6th Cir. 2020)..........................................................11, 12

*Saltmarshall v. VHS Children's Hosp. of Michigan, Inc.,*
402 F. Supp. 3d 389 (E.D. Mich. 2019), *aff'd sub nom.*
*Saltmarshall v. Prime Healthcare Servs.-Garden City LLC,* 831 F.
App'x 764 (6th Cir. 2020).........................................................................15

*Skinner v. Beemer,*
2007 WL 1469407 (E.D. Mich. May 21, 2007) ........................................9

*Wrobbel v. Int'l Bhd. of Elec. Workers, Loc.*
17, 638 F. Supp. 2d 780 (E.D. Mich. 2009) .............................................6

## Statutes

MCL 600.2911(2)(b).......................................................................................2

MCL § 600.2911(2)(a)..................................................................................12

## Court Rules

Fed. R. Civ. P. 9(g) ......................................................................................17

## I.    INTRODUCTION

Article III courts exist to resolve disputes of national, and sometimes international consequence. Article III judges preside over cases involving high stakes civil litigation, civil rights violations, and serious federal crimes. An Article III court is hardly the place to settle a neighborhood squabble over who parks their car where on a public street.  But, more importantly, to invoke the jurisdiction of a United States District Court, a plaintiff must plead his/her claim in compliance with the Federal Rules of Civil Procedure – something the Plaintiff in this case failed to do.

Plaintiff accuses Defendant Fadie Kadaf and his brother Jeahad Kadaf[1] of Civil Conspiracy (Count IV) and Defamation (Count V) because Mr. Fadie Kadaf notified Northville police officers about increasingly hostile letters he was receiving from Plaintiff after he lawfully parked his car in front of Plaintiff's house. Giving rather short shrift to his own harassing and threatening behavior, Plaintiff fails to properly plead the basic, necessary allegations to support or sustain either of those two counts. Starting with the basics, Plaintiff alleges no plausible facts demonstrating that the Kadaf Defendants conspired to commit any form of unlawful activity against him. Indeed, the Complaint's reference to Jeahad Kadaf is a single sentence, asserting that he (an attorney licensed to practice in Michigan) sent

---

[1] Undersigned counsel only represent the Kadaf Defendants.

1

Plaintiff a letter. Plaintiff's defamation claim similarly fails because he has not sufficiently alleged that Fadie Kadaf made any statements which were defamatory per se under Michigan law, nor does he identify any non-privileged remarks or indicate any pecuniary loss as a result of Mr. Kadaf's allegedly defamatory statements.[2]

The Kadaf Defendants, accordingly, move for dismissal of Counts IV and V of Plaintiff's Complaint.

## II.    STATEMENT OF FACTS

In 2019, Fadie Kadaf moved into the Ravines subdivision in Northville, Michigan. Residents (and visitors) of the neighborhood are permitted to park in their own driveways, as well as on the various streets in the neighborhood, with the caveat that vehicles may only be on one side of the road due to a fire lane. As a result, as is common with most neighborhoods, third party vehicles are sometimes parked in front of another homeowner's property. Yet Plaintiff Jonathan Edison, Mr. Kadaf's immediate neighbor, took issue with this practice and left a handwritten note on Mr. Kadaf's vehicle requesting he park his vehicles in front of his own home. (ECF No. 1, Complaint ¶ 16). Up until that point, things had been "fairly cordial" between the neighbors with no "real issues." (Complaint, ¶ 20).

---

[2] Plaintiff is also precluded from recovering exemplary or punitive damages under MCL 600.2911(2)(b) because he failed to send a retraction demand, a statutory prerequisite.

Mr. Kadaf responded with a letter[3] addressed to Plaintiff and his wife, indicating that, while the streets were available for anyone to park their car, the Kadafs would make an effort to avoid leaving vehicles in front of Plaintiff's home. Thereafter, Plaintiff typed up "a more pointed and direct" letter of his own, stating "[m]aybe in Dearborn you just do what the fuck [sic] you want but this isn't Dearborn and you're fucking [sic] with the wrong one! TRUST ME! … I'M FUCKING [sic] SICK OF IT!" (Complaint, ¶ 18).[4] Alarmed by the drastic hostility from Plaintiff, Mr. Kadaf turned the letter over to the Northville Police Department, noting the "racial undertone" in the letter and indicating that he "fel[t] threatened[.]" (Complaint, ¶ 18). No charges were filed against Plaintiff at that time because, as an officer supposedly explained, there were no statements "that actually says, you will be damaged or you will be harmed." (Complaint, ¶ 24).

---

[3] Plaintiff plainly incorporates Mr. Fadie Kadaf's letter into his Complaint by referencing statements contained therein. The letter is therefore attached as **Exhibit A**. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein").
[4] Plaintiff plainly incorporates Mr. Fadie Kadaf's letter into his Complaint by referencing statements contained therein. The letter is therefore attached as **Exhibit B.**

3

Mr. Kadaf's brother, Jeahad Kadaf, sent a cease and desist letter to Plaintiff in response to his threatening letter. Upon "receiv[ing] notification"[5] of Jeahad Kadaf's letter (Complaint, ¶ 28), Plaintiff authored a second typed letter[6] stating, among other choice language, "I WISH YOU WOULD HAVE STAYED IN DEARBORN WHERE YOU'RE FUCKING [sic] FROM" and, emphasizing as a "FINAL FUCKING [sic] WARNING[,]" that he would "ESCALATE THIS SITUATION" if the Kadaf Defendants contacted him again. This prompted Mr. Kadaf to return to the Northville Police Department where he once again expressed concerns over his neighbor's increasingly hostile behavior. (Complaint, ¶ 24). A week later, the Northville City Attorney charged Plaintiff with a city ordinance misdemeanor (Malicious Annoyance by Writing). Concluding that Plaintiff's letter encompassed no obscene language, 35th District Court Judge Michael J. Gerou dismissed the ordinance violation case the following year. (Complaint, ¶ 44).

Not wanting or seeking a return of peace, Plaintiff filed this lawsuit.

---

[5] It is unclear if Plaintiff ever opened or read the letter from Jeahad Kadaf. *See* **Exhibit C** (enclosing notice from United States Postal Service reflecting attempted service of letter sent by certified mail from Kadaf Law).

[6] Plaintiff plainly incorporates this second letter into his Complaint by referencing statements contained therein. The letter is therefore attached as **Exhibit C.**

## III.   ARGUMENT

### A.   Standard of Review

To "survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 599 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Following the two-step process set forth in *Ashcroft*, courts first disregard "mere recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Second, courts review any remaining allegations to determine whether they "plausibly" entitle the plaintiff to relief. *Ashcroft,* 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 567). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FRCP 8(a)(2)).

The Sixth Circuit has explained that "the combined effect of *Twombly* and *Iqbal* require [a] plaintiff to have greater knowledge now of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011). In other words, a "Plaintiff cannot use discovery to obtain specific facts necessary to craft a plausible complaint, 'even when the information needed to establish a claim ... is solely within the purview of the defendant or a third party.' " *Life For Relief & Dev. v. Charter One Bank*, 2013 WL

3810255, at *3 (E.D. Mich. July 23, 2013) (quoting New Albany Tractor, 650 F.3d at 1051). Thus, a complaint that does not provide the "when, where, in what or by whom" to support conclusory allegations, fails to state a claim. *Center for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011). And as such, pleadings which utilize "information and belief" are insufficiently pled, as they are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [court's] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 506 (6th Cir. 2013).

**B.    Plaintiff Fails to State a Viable Civil Conspiracy Claim (Count IV)**

Under Michigan law, a civil conspiracy consists of "(1) a concerted action (2) by a combination of two or more persons (3) to accomplish an unlawful purpose (4) or a lawful purpose by unlawful means." *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir. 2012) (quoting *Mays v. Three Rivers Rubber Corp*., 135 Mich. App. 42, 352 N.W.2d 339, 341 (1984)). Civil conspiracy, itself, is not actionable and instead "the gist or gravamen of the action … is the wrongful acts causing the damages." *Wrobbel v. Int'l Bhd. of Elec. Workers, Loc.* 17, 638 F. Supp. 2d 780, 794 (E.D. Mich. 2009) (quoting *Roche v. Blair*, 305 Mich. 608, 613–614 (1943)). *See also Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir. 2012) ("a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort") (quoting *Early Detection Ctr., P.C.*

6

*v. N.Y. Life Ins. Co.,* 157 Mich. App. 618, 403 N.W.2d 830, 836 (1986)). As such, "a conspiracy standing alone without the commission of acts causing damage w[ill] not be actionable ... [because] [t]he cause of action does not result from the conspiracy but from the acts done." *Roche*, 305 Mich. at 614.

Furthermore, "[p]leading requirements governing civil conspiracies are relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "[V]ague and conclusory allegations unsupported by material facts will not be sufficient" to sustain a conspiracy claim. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Here, Plaintiff names malicious prosecution as the predicate tort to his conspiracy claim, but only summarily alleges that "[the Kadaf] Defendants, in combination, maliciously conspired to have unfounded criminal charges filed against Edison." (Complaint, ¶ 60). But a conspiracy requires more – it "requires proof of an intentional agreement." *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1341 (E.D. Mich. 2011) (citing *Temborius v. Slatkin,* 157 Mich.App. 587, 599–600, 403 N.W.2d 821, 827–28 (1986)). At minimum, the "circumstances, acts and conduct of the parties [must] establish an agreement in fact." *Id. See also Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 924 (E.D. Mich. 2019) ("the plaintiff must show that "there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed

in furtherance of the conspiracy that caused injury to the complainant") (internal
citations omitted).

Plaintiff's Complaint fails to provide sufficient factual allegations to support
his conspiracy claim. A conspiracy requires at least two people acting in concert.
But the only mention of the "second" person (here, Jeahad Kadaf) is that the attorney
sent the Plaintiff a letter. (Complaint, ¶ 28). There are no allegations that Jeahad
Kadaf took any action outside of drafting the letter, and there is nothing illegal about
an attorney communicating a client's position. *See Couch v. Schultz*, 193 Mich. App.
292, 295, 483 N.W.2d 684, 686 (1992) ("It is well settled in Michigan that statements
made during the course of legislative proceedings [and] statements made during the
course of judicial proceedings … are absolutely privileged" and instructing that the
privilege "should be liberally construed") (citing *Timmis v. Bennett*, 352 Mich. 355,
365, 89 N.W.2d 748, 753 (1958)). And, the Complaint does not affirmatively allege
that Plaintiff even opened or read the letter. *See e.g.*, *supra* note 5. Regardless,
merely sending a letter (similar to those lawyers send everyday) does not create an
inference that the Kadafs hatched a plan to initiate criminal charges against Plaintiff[7]

---

[7] Plaintiff's Complaint also suggests the tort underlying his civil conspiracy claim is
intentional infliction of emotional distress. (Complaint, ¶ 59) ("Defendants illegally,
maliciously, and wrongfully conspired with one another with the intent to and for
the illegal purpose of intimidating, silencing and inflicting emotional distress upon
Edison"). "Under Michigan law, to state a claim for intentional infliction of
emotional distress, [Plaintiff] must allege extreme or outrageous conduct which,
intentionally or recklessly, causes extreme emotional distress." *Garretson v. City of*

– to hold otherwise would suggest that anytime a lawyer sends a position statement he or she is acting as a co-conspirator to their client.

To proceed, Plaintiff must allege "something more than a [] personal belief that he or she is the victim of conspiracy", which he has failed to do. *Skinner v. Beemer*, 2007 WL 1469407, at *1 (E.D. Mich. May 21, 2007). *See also Detroit Will Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 711–12 (E.D. Mich. 2021) (granting motion to dismiss civil conspiracy claims where plaintiff did not plead "any specific allegations of any specific plaintiff conspiring with another to commit an unlawful act" and noting that "pleadings are not placeholders while a party pursues discovery of wrongdoing"); *Palmer v. Allen*, 2016 WL 3405872, at *15 (E.D. Mich. June 21, 2016) (finding that Plaintiff failed to state a cognizable conspiracy claim in the

---

*Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005). "Liability will not be found for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'; rather, the case must be one in which the facts would arouse the resentment of an average member of the community against the actor, leading him to exclaim, 'Outrageous!' " *Id*. (citing *Roberts v. Auto–Owners Ins. Co*., 422 Mich. 594, 374 N.W.2d 905, 908–09 (1985)). Plaintiff does not identify any action by Jeahad Kadaf that is "outrageous" given that the Complaint's sole reference to him merely alleges that he sent Plaintiff a letter. Nor does the Complaint sufficiently allege that Fadie Kadaf took any "outrageous" conduct. As such, to the extent that Plaintiff's conspiracy claim is premised on intentional infliction of emotional distress, it fails to state a claim. *See e.g.*, *Liogghio v. Salem*, 2016 WL 4191742, at *6 (E.D. Mich. Aug. 9, 2016) ("Because the intentional infliction of emotional distress fails to state a claim, if this is the alleged tort alleged by [Plaintiff], then [Plaintiff's] claim of 'civil conspiracy' must be dismissed for failure to state a claim upon which relief may be granted").

absence of "specific facts to support a finding that [the Defendants] … conspired together to assault [Plaintiff]).

Plaintiff's civil conspiracy claim fails for another reason too, being that he does not state a plausible claim for the underlying malicious prosecution tort. *See Brintley v. St. Mary Mercy Hosp.*, 904 F. Supp. 2d 699, 733 (E.D. Mich. 2012), *aff'd*, 545 F. App'x 484 (6th Cir. 2013) ("Where a plaintiff has failed to establish the underlying tort, his civil conspiracy claim also fails"). In Michigan, a "prosecutor's exercise of his or her independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution." *Kamate v. Henry*, 2019 WL 4934513, at *6 (E.D. Mich. Oct. 7, 2019) (citing *Matthews v. Blue Cross & Blue Shield of Michigan*, 456 Mich. 365, 378, (1998)). *See also Ghaith v. Rauschenberger*, 2010 WL 4982795, at *10 (E.D. Mich. Dec. 2, 2010) (observing that the "the Michigan Supreme Court significantly limited private individuals' potential exposure to liability for malicious prosecution" in *Matthews*). Plaintiff's Complaint is devoid of any allegations that the Northville City attorney did not exercise independent discretion in filing the criminal complaint against him, providing another independent basis that mandates dismissal of the claim.

## C. Plaintiff Fails to State a Viable Defamation Claim (Count V)

Plaintiff's claim for defamation against Fadie Kadaf suffers a similar fatal fate. First, in Michigan, "a plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to

be defamatory." *Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 867 (6th Cir. 2020) (citing *Ghanam v. Does*, 303 Mich.App. 522, 845 N.W.2d 128, 142 (2014) (citation omitted)). A review of Plaintiff's Complaint reveals the following statements allegedly made by Mr. Kadaf, as purportedly captured on officer Ben Sellenraad's camera during their interactions:

- "Kadaf tells Defendant Sellenraad that he feels threatened, although the letter contains no threats." (Complaint, ¶ 21).

- "Kadaf complains of a 'racial undertone' in the letter although race is not mentioned, nor do the letters contain any racial slurs or epithets." (Complaint, ¶ 23).

- "Kadaf threatens to handle the situation in his own way and to contact the Northville City Attorney and Wayne County Prosecutor for what he described as 'threatening letters', although the letters contain no threats of physical harm or property damage." (Complaint, ¶ 31).

Plaintiff summarizes these statements as accusations that he "threated Fadie Jamil Kadaf", is "mentally unstable" and "racist" and that facts recited in his letters to Mr. Kadaf were false. (Complaint, ¶ 63-67). Plaintiff further asserts that these statements are defamatory per se. (Complaint, ¶ 71). Both contentions are untrue. First, contrary to the "most important" requirement that a Plaintiff "identify the precise materially false statement published[,]" here, Plaintiff fails to plead any statement in which Mr. Kadaf referenced Plaintiff's mental state, explicitly stated that he was racist, or accused Plaintiff of making false assertions in the various letters. *Ryniewicz v.*

11

*Clarivate Analytics*, 803 F. App'x 858, 867 (6th Cir. 2020) (citing *Rouch v. Enquirer & News of Battle Creek Michigan*, 440 Mich. 238, 487 N.W.2d 205, 220 (1992)).

Second, even ignoring Plaintiff's wholesale mischaracterization of Mr. Kadaf's words, the statements do not qualify as defamatory per se under Michigan law. At common law, "defamation per se typically concerns issues of chastity, commission of a crime, loathsome disease, or disparagement of one's profession or business." *Nehls v. Hillsdale College,* 65 Fed.Appx. 984, 991 (6th Cir.2003).[8] None of Mr. Kadaf's statements fit this bill. In his conversations with officer Sellenraad he merely expresses that he "feels threatened" and highlights the "racial undertone" of the letters – remarks which are clearly not attacks on Plaintiff as an author "of children's books" (Complaint, ¶ 63-67) or otherwise salacious accusations. *Cf. Gilliam v. Ordiway*, 147 F. Supp. 3d 664, 669 (E.D. Mich. 2015) (finding that Plaintiff had sufficiently alleged a claim for defamation per se based on claims that defendants emailed his family members, "falsely accusing him of rape, bigamy, and

---

[8] Defendants note authority suggesting that Michigan has since replaced this list of categories with "significantly more narrow statutory provisions." *Heike v. Guevara*, 654 F. Supp. 2d 658, 676 (E.D. Mich. 2009) (citing 2 Mich. Law & Practice, Torts, § 3.68 (2d ed.2004)). *See also* MCL § 600.2911(2)(a) ("[I]n actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings"); *Marks One Car Rental, Inc. v. Auto Club Grp. Ins. Co.*, 761 F. App'x 516, 523 (6th Cir. 2019) (recognizing the tension between Michigan's common law and statutory authorities regarding defamation per se"). This split in authority is immaterial to this case because Mr. Kadaf's statements do not encompass either definition of defamation per se.

tax evasion"). Plaintiff consequently fails to sufficiently plead a claim for defamation per se.

To the extent that Plaintiff's Complaint can be interpreted as asserting a claim for defamation, such claim also fails. Michigan law tasks this Court with determining, "as a matter of law[,] whether a particular statement is defamatory" *Nichols v. Moore*, 477 F.3d 396, 399 (6th Cir. 2007) (citing *Fisher v. Detroit Free Press, Inc*., 158 Mich. App. 409, 404 N.W.2d 765, 767 (1987)) and meets each element of a four prong test:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) [] the existence of special harm caused by publication. *Ryniewicz*, 803 F. App'x 858 at 866–67.

As to the first element, with regard to falsity, "[i]f the gist, the sting, of the [published statement] is substantially true, the defendant is not liable." *Nichols*, 477 F.3d at 399 (citing *Detroit Free Press*, 158 Mich. App 409). It is hard to comprehend how Plaintiff disputes the "racial undertone" lurking in his letters given his continued suggestions therein that Mr. Kadaf return to Dearborn "where he is from."[9] Moreover, Mr. Kadaf's response of feeling threatened or characterizing Plaintiff's letters as threatening cannot be said to be false considering Plaintiff's

---

[9] *See e.g*., **Exhibit B** ("Maybe in Dearborn you just do what the fuck you want but this isn't Dearborn"); Exhibit C ("I WISH YOU WOULD HAVE FUCKING STAYED IN DEARBORN WHERE YOU'RE FUCKING FROM!!!!!!!!!!!!!!!!!!").

increasing hostility and his assertions that Mr. Kadaf was "messing with the wrong person."[10] Second, a communication is only defamatory if it "tends to lower an individual's reputation in the community or deters third persons from associating or dealing with that individual." *Ireland v. Edwards*, 230 Mich. App. 607, 614 (1998). But not all defamatory statements are actionable because, if a remark "cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment." *Id. See also Hope-Jackson v. Washington*, 311 Mich. App. 602, 621, 877 N.W.2d 736, 747 (2015) (recognizing that while "there is no constitutional protection given to false statements of fact[,]" expressions "of opinion are protected from defamation actions"). Here, Plaintiff's Complaint does not contain allegations that Mr. Kadaf explicitly called him a racist or that he made any remark about Plaintiff's mental state. *Cf.* (Complaint, ¶ 23) ("Kadaf complains of a 'racial undertone' in the letter").

Next, although the Complaint alleges that Mr. Kadaf's statements satisfy the third-party publication requirement, "reports of crimes or of information about crimes to the police are absolutely privileged" and as a matter of law cannot be used to sustain a defamation claim. *Eddington v. Torrez*, 311 Mich. App. 198, 201 (2015).

---

[10] *See e.g.*, **Exhibit C** ("… you're fucking with the wrong one. TRUST ME!"); Exhibit C ("IF YOU CHOSE TO CONTACT ME AGAIN … IM GOING TO ESCALATE THIS SITUATION!!!!!!!! … this is my FINAL FUCKING WARNING!!!!!!!!!!").

14

The privilege is an important one, dating back decades, because without it "we could not reliably have practical law enforcement if crime victims, or those with knowledge of crimes, were forced to risk a lawsuit upon reporting what they know or what they suffered." *Id.* at 202 (citing *Shinglemeyer v. Wright,* 124 Mich. 230, 82 N.W. 887 (1900)). *See also Guzall v. Michigan State Univ*., 2022 WL 4586568, at *9 (Mich. Ct. App. Sept. 29, 2022), (dismissing defamation claim and recognizing that "statements to the police [a]re absolutely privileged, regardless of whether they [a]re true or whether the defendant act[s] with malice").

As such, Mr. Kadaf's statements to officer Sellenraad, discussing the increasingly hostile letters, are not actionable under Michigan law. *See e.g*., *Saltmarshall v. VHS Children's Hosp. of Michigan, Inc.*, 402 F. Supp. 3d 389, 396 (E.D. Mich. 2019), *aff'd sub nom. Saltmarshall v. Prime Healthcare Servs.-Garden City LLC,* 831 F. App'x 764 (6th Cir. 2020) (finding that *Eddington* "resolved any doubt as to whether the privilege … is absolute" and dismissing defamation claim against physician who texted police officer accusing the plaintiff of murdering his child). *Est. of Kelly v. Peet*, 2016 WL 757537, at *3 (Mich. Ct. App. Feb. 25, 2016) (concluding that allegations of fraud, contained in a request for investigation to the Attorney Grievance Commission, as "statements to law enforcement were absolutely immune" and required dismissal of plaintiff's defamation claim).

15

Third, to demonstrate "fault", Plaintiff must show that Mr. Kadaf was negligent in making the specific statements at issue. *Michigan Microtech, Inc. v. Federated Publications, Inc*., 187 Mich. App. 178, 184, 466 N.W.2d 717, 721 (1991) ("Where the publication involves a private figure, the privilege does not exist, and the negligence standard … applies"). Review of the statements contained in Plaintiff's letters demonstrates that any reasonable person may have similarly felt threatened[11] or found the letters to have an underlying "racial undertone."[12] Mr. Kadaf was therefore not negligent in reporting his concerns and feelings to officer Sellenraad. *Cf. Case v. Hunt*, 2019 WL 1780643, at \*4 (Mich. Ct. App. Apr. 23, 2019) (concluding that a defendant made a statement "at least negligently" where she "intentionally made a statement that was not true" and "at least should have known the statement was not true").

Lastly, as to the fourth prong requiring a Plaintiff to plead the existence of special damages, Plaintiff fails to identify any pecuniary harm resulting from the allegedly defamatory statements. Instead, Plaintiff's pleading deficiencies continue, with his conclusory assertion that Mr. Kadaf's remarks "resulted in damage to Plaintiff's reputation in the community and economic loss, including, but not limited to, the following: emotional distress[.]" (Complaint, ¶ 70). Without any real-world

---

[11] *See e.g.*, *supra* note 9.
[12] *See e.g.*, *supra* note 10.

connection to his generalized claim, Plaintiff does not meet the heightened pleading requirement for special damages. *See* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated"); *Heike*, 654 F. Supp. 2d at 675 (E.D. Mich. 2009) (dismissing defamation claim where plaintiff "did not allege any specific pecuniary harm resulting from the defamation, nor has she explained how any reputational damage translated into economic harm").

Plaintiff's defamation claim fails as a matter of law, no matter which theory he alleges is applicable.

## IV.   CONCLUSION

For the foregoing reasons, Defendants Fadie Kadaf and Jeahad Kadaf, respectfully request that this Court grant their Motion, dismiss Count IV and V of Plaintiff's Complaint, and award the Kadaf Defendants any other relief deemed proper under the circumstances.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK & STONE,
P.L.C.


By:   */s/Gerald J. Gleeson, II*
          Gerald J. Gleeson, II (P53568)
          Erica L. Jilek (P84498)
          Sydney G. Rohlicek (P85655)
          MILLER, CANFIELD, PADDOCK &
          STONE,  P.L.C.
          Attorneys for Defendants Fadie Kadaf and
          Jeahad Kadaf
          840 W. Long Lake Rd., Suite 150 Troy, MI
          48098
          (248) 879-2000
          gleeson@millercanfield.com
          jilek@millercanfield.com
Dated: September 5, 2023      rohlicek@millercanfield.com


## CERTIFICATE OF SERVICE

The undersigned certifies that on, September 5, 2023, she served the foregoing

document via the court's ECF filing system, which will send notification of such

filing to all counsel of record.


*/s/Sydney G. Rohlicek*
Sydney G. Rohlicek

41073241.2/162273.00001

18