UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN E. EDISON,

        Plaintiff,               Case No. 2:23-cv-11741
                                     Honorable Anthony P. Patti

v.

TOWNSHIP OF
NORTHVILLE, *et. al.*,

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS SELLENRAAD AND NORTHVILLE TOWNSHIP'S MOTION FOR SUMMARY JUDGMENT (ECF No. 31)**

## I.    OPINION

### A.    Procedural Background

Plaintiff Jonathan E. Edison initiated this lawsuit on July 20, 2023.  (ECF No. 1.)  Following a motion to dismiss (ECF No. 14), the Court entered a stipulated order of dismissal as to Defendants Fadie Jamil Kadaf and Jeahad Kadaf. (ECF No. 21.)  As a result, the only remaining Defendants are the Township of Northville and Northville Township police officer Ben Sellenraad ("Sellenraad"). Edison alleges that Northville Township and Officer Sellenraad violated his First Amendment right to free speech and the Michigan Constitution.  (*Id*. at PageID.7-8.)  Edison also alleges malicious prosecution against Officer Sellenraad under

1

Mich. Comp. Laws 600.2907.  (*Id*. at PageID.8-9.)

The parties consented on October 5, 2023 to adjudicate the entire dispute before the Undersigned Magistrate Judge.  (ECF Nos. 17 & 18.)  Currently before the Court is Defendants Northville Township and Sellenraad's motion for summary judgment under Fed. R. Civ. P. 56, based upon governmental and qualified immunity and the non-viability of the state law claim.  (ECF No. 31.)

## B.    Factual Background

In 2021, Plaintiff and Fadie Jamil Kadaf ("Kadaf") became neighbors in Northville.  (ECF No. 31-3, PageID.348 [Edison Dep. Tr., p. 22].)  It did not go well.  In 2022, a dispute between the neighbors arose when Kadaf parked his car in front of Edison's house.  (*Id*. at p. 23.)

### 1.    Plaintiff's first & second letters

One day, Edison was having guests over and placed a note on Kadaf's car, asking him:  "Can you PLEASE park your cars in front of your house[?]  Thank you!"  (ECF No. 31-2, PageID.316, 331; ECF No. 33-1 [Pl.'s 1st Letter].)  In response, Kadaf moved his car and placed a letter in Edison's mailbox.  (ECF No. 31-3, PageID.348 [Edison Dep. Tr., p. 25].)  The response stated that Edison's note was "rude" and that the road was "public domain."  (ECF No. 31-2, PageID.316, 331.)  Things escalated from there.

Edison wrote a letter back to Kadaf, employing repeated expletives, such as

2

"fuck," "fucking," "pussy," "ass," "motherfucker," and "douche."  (ECF No. 31-2, PageID.329; ECF No. 33-2 [Pl.'s 2ⁿᵈ Letter].)[1] The letter also asked numerous times for Kadaf to leave Edison alone or else he will "**ESCALATE THE SITUATION**[] **(to a legal matter!)**."  (*Id*. ECF No. 31-2, PageID.329 (emphasis in original).)

### 2.    Kadaf's September 23 & September 26, 2022 NTPD visits

On September 23, 2022, Kadaf went to the Northville Township Police Department (NTPD) to report his concern about the situation involving Edison and, *inter alia*, spoke with Officer Sellenraad about the above letter exchanges.  (ECF No. 31-2, PageID.309, 324-325; ECF No. 33-8, PageID.539-540.)  Kadaf felt "threatened" by the second letter and characterized it as containing "a little bit of what I think is a racial undertone[.]"  (ECF No. 33-3, PageID.456 [Trans. Sept. 23, 2022 Video Convers.]; *see also* ECF No. 31-2, PageID.311, 325.)  Specifically, Kadaf felt threatened by the statement, "Maybe in Dearborn you just do what the fuck you want but this isn't Dearborn and you're fucking with the wrong one!"  (ECF No. 31-2, PageID.311, 317, 325; ECF No. 33-8, PageID.540.)  The Court takes judicial notice under Fed. R. Evid. 201(b)(1) that Dearborn is widely known

---

[1] At oral argument, Plaintiff's counsel conceded that all of these words were in fact used by his client, consistent with para. 42 of the civil complaint, wherein they are listed. (ECF No. 1, PageID.7.)

to have a large number of residents who are of Middle Eastern descent.

In response, Officer Sellenraad explained that the letter Kadaf brought in – the one that had been left in his mailbox – did not contain any threatening words and that "[t]here's nothing that would escalate to a criminal nature.  Expletives and those kinds of things are not enforceable from a legal standpoint or anything else." (ECF No. 33-3, PageID.457 [Trans. Sept. 23, 2022 Video Convers.].)  At Kadaf's request, Officer Sellenraad went to speak to Edison, which occurred on September 24, 2022, and Sellenraad reported that Edison had "no desire to take the situation any further[,]" and that Edison admitted "he may have taken the tone of his second note 'a bit far[.]'"  (ECF No. 31-2, PageID.311.)  Officer Sellenraad then updated Kadaf on the conversation.  (*Id*.)

On September 25, Kadaf reported suspicious activity to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  (*Id*. at PageID.314-315.) According to the intake summary, Kadaf stated that he was concerned for his family's safety due to Edison's recent "erratic" behavior revolving around this parking dispute.  (*Id*.)  On September 26, NTPD Officer A. Micek spoke with Kadaf, who asked if the officer could contact Edison.  (*Id*. at PageID.319, 321.) On September 27, Micek spoke with Edison's wife, and on September 30, Micek made contact with Edison.  (*Id*.)

### 3.    A third letter & Kadaf's October 12, 2022 NTPD visit

On October 12, 2022, Kadaf went to the NTPD again, this time to turn over another letter he believed to be from Edison.  (ECF No. 31-2, PageID.322, 325; ECF No. 33-8, PageID.540.)  This note uses the words "fuck" or "fucking" on eight occasions.  (ECF No. 31-2, PageID.317-318, 332; ECF No. 33-4 [Pl.'s 3rd Letter]; ECF No. 33, PageID.436, 438.)  Again, Sellenraad stated that, "I cannot charge someone for noncriminal behavior[,]" and "I can't submit something that's not criminal in it's [sic] nature to a prosecutor to review."  (ECF No. 33-5, PageID.489-90 [Oct. 12, 2022 Trans. Video Conv.].)

### 4.    Warrant request & misdemeanor complaint

Following this second interaction, Lieutenant Reinke – Officer Sellenraad's lieutenant – reviewed the police reports and "directed" Sellenraad to submit a warrant request.  (ECF No. 33-10, PageID.571 [Reinke Dep. Tr., p. 11].)  According to  Lieutenant Reinke, "At that point, I looked at the police reports, took a look at the case, and felt that the officer handled it appropriately, and that at that point the only thing that we could possibly do, aside from documenting what he already had, would be to have a prosecutor look at it to see if there was some sort of a charge or offense that we weren't identifying."  (*Id*.)

On October 18, a local warrant request was submitted to the Northville Prosecutor, Gregory D. Demopoulos, for review.  (ECF No. 31-2, PageID.325;

ECF No. 33-8, PageID.539-540.)  According to Officer Sellenraad, the warrant

request was composed of police reports and associated documents, including the

letters between Edison and Kadaf.  (ECF No. 31-7, PageID.426 [Sellenraad Dep.

Tr., p. 48].)  The warrant request did not recommend that charges be issued, and it

did not list a specific Michigan statute under which to charge.  (ECF No. 31-6,

PageID.404 [Demopoulos Dep. Tr., p. 12-13]; ECF No. 33-9.)  As explained by

Demopoulos, "[the officers] don't recommend [that charges be issued].  They –

they leave that up to me.  They … send it over to me like these might be the

charges will you consider it?  And I have independent authority to approve or

deny."  (*Id*., p. 13.)  Demopoulos further explained the factors that he used in

authorizing charges, namely that "in [Plaintiff's] writings 'fucking', 'pussy', 'ass',

'motherfucker', 'douche', 'asshole' and 'fuck' were obscenities."  (*Id*., PageID.

405, Demopoulos Dep. Tr., p. 14.)

     On October 20, 2022, Demopoulos signed the "Recommendation to Issue

Complaint" against Edison.  (ECF No. 31-2, at PageID.333.)  On this

recommendation, Demopoulos signed under the statement, "I find there is probable

cause to believe the following violation … was committed[.]"  (*Id*.)  Demopoulos

then found and listed Mich. Comp. Law § 750.390 – "Malicious Annoyance by

Writing" – as the violation *in his own handwriting*.  (ECF No. 31-6, PageID.404

[Demopoulos Dep. Tr., p. 13]; ECF No. 33-9.)  He clarified that Officer Sellenraad

had not recommended the statutory section cited.  (*Id*.)  Demopoulos further

testified that, "Officer Sellenraad … was kind of surprised that there was a statute

like this."  *(Id*.)  Consistently, Officer Sellenraad testified that Demopoulos

"explained that he thought this was the applicable law, and that's why he selected

it." (ECF No. 31-7, PageID.428 [Sellenraad Dep. Tr., p. 55].)  Sellenraad further

explained his reliance on upon that legal opinion: "I took *in good faith* that the

information, which I documented and provided to Mr. Demopoulos, was reviewed

and that it was his legal opinion that the charge was warranted." (*Id*. at PageID.431

[Sellenraad Dep. Tr., p. 69] (emphasis added).)

### 5.    35th District Court (Case No. 2022-22V2887-OM)

On October 21, Officer Sellenraad "received an approved summons for

Edison from [the Northville Township] Prosecutor Greg Demopoulos for violation

of [Mich. Comp. Laws §] 750.390 – Malicious annoyance by writing."  (ECF No.

31-2, PageID.326; ECF No. 33-8, PageID.541.)  That very day, Sellenraad swore

to the affidavit before Judge Michael J. Gerou of Michigan's 35th District Court,

as a complaining witness.  (*Id*., PageID.326, 334; ECF No. 33-8, PageID.541; ECF

No. 33-6.)  When asked whether he was required to sign the criminal complaint,

Sellenraad stated:  "It is my understanding that if [the misdemeanor complaint] is

approved that it's my responsibility to follow that through, yes."  (ECF 33-7,

PageID.518 [Sellenraad Dep. Tr., p. 50].)  Further, Sellenraad explained that if the

"prosecutor is saying that there's sufficient probable cause to follow through with that then, yes, that would be my responsibility [to sign the complaint]."  *Id*. Sellenraad's lieutenant, Reinke, also clarified that he was unsure whether "it's a hard fact requirement [to sign a misdemeanor complaint] or if it's just a – that it's [an] officer's responsibility . . . ."  (ECF No. 33-10, PageID.570 [Reinke Dep. Tr., p. 9].)

On December 19, 2022, Edison was arraigned on a charge of malicious annoyance by writing, in violation of Northfield Township Ordinance 67, Sec. 54, adopting Mich. Comp. Law § 750.390.  (ECF No. 31-2, PageID.334; ECF No. 31-5, PageID.384-385, 390-391.)  The relevant statute provides:

> Any person who shall knowingly send or deliver or shall make, and for the purpose of being delivered or sent, shall part with the possession of any letter, postal card or writing containing any obscene language with or without a name subscribed thereto, or signed with a fictitious name, or with any letter, mark or other designation, with the intent thereby to cause annoyance to any person… shall be guilty of a misdemeanor.

Mich. Comp. Law § 750.390.  On February 27, 2022, an evidentiary hearing was held in the 35th District Court "for the clarification of what constitutes obscene words."  (ECF No. 39, PageID.595.)  On March 20, 2023, Edison filed a motion to dismiss the charge, arguing that Section 750.390 was unconstitutional.  (*Id*.)  On May 23 or 24, 2023, Judge Gerou concluded that the Michigan statute was not unconstitutionally vague but granted Edison's motion to dismiss because the court "d[id] not find the writing to be obscene, but rather f[ound] the language to be

8

vulgar and offensive." (*Id*. at PageID.597-98.)

## C. Standard

Defendants move for summary judgment under Fed. R. Civ. P. 56(a). Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

### D.    Discussion/Analysis

#### 1.    Violation of the First Amendment (Count I)

Edison alleges that Northville Township and Sellenraad, acting under color of state law, "deprived Plaintiff of the rights secured to him by the United States Constitution" under the First Amendment, invoking 42 U.S.C. § 1983. (ECF No. 1, ¶¶ 46-47.) "To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The First Amendment to the United States Constitution provides that "Congress shall make no law … abridging the freedom of speech . . . ." U.S. Const. amend. I. However, the United States Supreme Court has held that "obscenity is not within the area of constitutionally protected speech or press." *Roth v. United States*, 354 U.S. 476, 485 (1957). Mich. Comp. Law § 750.390 prohibits the sending of letters that "contain[] any obscene language . . . ." The Supreme Court has also found that "[s]tate statutes designed to regulate obscene materials must be carefully limited." *Miller v. California*, 413 U.S. 15, 23-24 (1973). In deciding whether a writing or work is obscene, the trier of fact must determine:

> (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller*, 413 U.S. at 24 (internal quotations and citations omitted).  Using this three-prong test, Judge Gerou concluded that Edison's use of profanity did not constitute obscene language, instead finding it "vulgar and offensive," and further concluded that the Michigan statute was "not unconstitutional due to vagueness."  (ECF No. 39, PageID.597-598.)

### a.    "Arguably Obscene"

In his § 1983 claim, Plaintiff argues that Northville Township and Officer Sellenraad violated Edison's First Amendment right to free speech by pursuing a criminal complaint against him.  (*See* ECF No. 1, ¶¶ 1, 5, 45-47.)  According to Plaintiff, "it is clear that a reasonable person recognizes that mere profanity is non-obscene constitutionally protected speech."  (ECF No. 33, PageID.441.)

Although Plaintiff argues that Officer Sellenraad had the "clarity of an experienced attorney," (*id*., PageID.446), this Court recognizes that Sellenraad is not an attorney; rather, he is a police officer.  As such, and at the direction of his superior officer (Lieutenant Reinke), Officer Sellenraad submitted a warrant request to the prosecuting attorney (ECF No.33-7, PageID.516 [Sellenraad Dep. Tr., p. 45]), and Prosecutor Demopoulos identified a statute and found probable cause that Plaintiff had used obscene language, in violation of Mich. Comp. Laws § 750.390 (ECF No. 31-6, PageID.404 [Demopoulos Dep. Tr., p. 13]).  At oral argument before this Court, Plaintiff's counsel acknowledged that the question of

12

whether a statute has been violated calls for a legal conclusion.  In this context, it was reasonable for Officer Sellenraad to rely upon the prosecutor.  At oral argument and in his briefing, Plaintiff seemingly argues that Officer Sellenraad is expected to determine that the Michigan statute under which Plaintiff was charged is unconstitutional and the words communicated were not constitutionally obscene. (*See* ECF No. 33, PageID.441-443.)   As discussed in greater detail *infra*., while Officer Sellenraad can be expected to have a modicum of knowledge as to constitutional rights and the law, he cannot be expected to determine that a Michigan statute is unconstitutional – a finding likewise not made by the state court – or to engage in the three-part legal analysis set forth in *Miller*.  Instead, he may, and did, submit the case to a legal professional to determine if criminal charges were warranted.

Following the prosecutor's legal opinion and decision to prosecute, Officer Sellenraad operated under the belief that he was upholding a constitutionally valid Michigan statute.  "Police are charged to enforce laws until and unless they are declared unconstitutional."  *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979) (emphasis added).  As verified through research, and, as admitted by counsel at oral argument, Mich. Comp. Law § 750.390 has not been declared unconstitutional.  Of course, the constitutionality of the Michigan statute is not before this Court, and the state court never had to reach that issue.  Plaintiff's

13

suggestion that Judge Gerou's decision "agreed" that Mich. Comp. Laws §
750.390 was "unconstitutional as applied to Mr. Edison[,]" (ECF No. 33,
PageID.440), is not well-taken; rather, his order stated that the statute "is not
unconstitutional due to vagueness . . . [,]" and that "this Court does not find the
writing to be obscene, but rather finds the language to be *vulgar and offensive*."
(ECF No. 39, PageID.598 (emphasis added)).  He made no "as applied"
constitutional finding.

Nonetheless, even if Office Sellenraad had not submitted Plaintiff's
communications for prosecutorial review, Sellenraad could reasonably have
believed that Plaintiff's writings contained "obscene language" as contemplated by
Mich. Comp. Laws § 750.390.  (*See* ECF No. 31, PageID.299 n.2.)  *Black's Law
Dictionary* defines the term "obscene" as: "Extremely offensive under
contemporary community standards of morality and decency; grossly repugnant to
the generally accepted notions of what is appropriate."  *Obscene*, Black's Law
Dictionary (12th ed. 2024).  Even under this definition, it would not have been
unreasonable to conclude – as the prosecutor did – that certain words written by
Plaintiff to his neighbor are "extremely offensive," specifically:  "fuck," "fucking,"
"pussy," "asshole," "motherfucker," and "douche."  (ECF No. 1, ¶ 42; ECF No.
31-2, PageID.329; ECF No. 33-2 [Pl.'s 2nd Letter].)  Indeed, even at oral argument,
Plaintiff's counsel conceded that the language used was arguably obscene, standing

14

alone.  Therefore, this Court does not agree with Plaintiff's argument that a "reasonable person" would necessarily have recognized that the language used here "is non-obscene[,] constitutionally protected speech."  (ECF No. 33, PageID.441.)  This Court is not convinced that a reasonable police officer – much less "a reasonable person" – would understand the nuances to the legal definition of obscenity, particularly in the context of the statutory language and the actual words at issue here, which can be fairly described as "extremely offensive."

### b.    The Township's Liability

Defendants argue that Northville Township is entitled to governmental immunity, as it "was engaged in the exercise or discharge of a government function[,]" and is "not liable for any intentional tortious acts committed by [its] employees[.]"  (ECF No. 31, PageID.294-297.)  *See also* Michigan's Governmental Tort Liability Act (GTLA), Mich. Comp. Laws § 691.1401, *et seq*.; *Margaris v. Genesee Cnty.*, 919 N.W.2d 659, 668 (Mich. App. 2018) ("the activity of law enforcement includes investigating suspected crimes and resolving those investigations."); and, *Mays v. Snyder*, 916 N.W.2d 227, 266 (Mich. App. 2018) ("there is no exception to governmental immunity for intentional torts committed by governmental employees exercising their governmental authority," and "governmental employers may not be held liable for the intentional tortious acts of their employees[.]") (internal and external citations omitted).

15

In his motion response, Plaintiff argues that municipal liability can be pursued under *Monell*, because Northville Township has a policy that "requires police officers to swear to criminal complaints upon direction without regard to the officer's knowledge of the target's actual innocence." (ECF No. 33, PageID.445-446.) A township cannot be held liable under 42 U.S.C. § 1983 based on a *respondeat superior* theory. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). "Instead, the municipality may be liable only if the government itself is to blame for the unconstitutional acts—that is, if it adopted or ratified a policy or custom that caused the harm inflicted by its officers or employees." *Sistrunk v. City of Hillview*, 545 F. Supp.3d 493, 498 (W.D. Ky. 2021) (citing *Monell*, 436 U.S. at 694.) Thus, the mere mention that Northville Township deprived Plaintiff of his rights does not put Northville Township on notice that it is being sued on a *Monell* claim. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (stating that "Section 1983 liability must be premised on more than mere respondeat superior…"). Other than seeking an order requiring Defendants to "adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described herein[,]" (ECF No. 1, PageID.11 ¶ g), Plaintiff's pleading does not identify a policy as a basis for *Monell* liability. Notably, the complaint is devoid of any mention of a "policy" or "practice" or "custom" or "procedure" by Northville Township and its police

16

department to deprive individuals of their constitutional rights.  Nor does Plaintiff

attach such a policy to his motion response.  (*See* ECF No. 33, PageID.436 [Index

of Exhibits].)

While the Plaintiff claims that Northville Township violated Plaintiff's First

Amendment rights, pursuant under 42 U.S.C. § 1983, this claim does not give

notice that Plaintiff is pursuing a *Monell* claim.  Additionally, "a plaintiff may not

defeat summary judgment by asserting a claim that he did not plead in the

complaint." *Spengler v. Worthington Cylinders*, 514 F.Supp.2d 1011, 1017 (S.D.

Ohio 2007).  *See also Tucker v. Union of Needletrades, Indus. & Textile Emps.,*

407 F.3d 784, 788–89 (6th Cir. 2005) (affirming a district court's refusal to

consider a new claim that was raised for the first time in opposition to summary

judgment).  Finally, Plaintiff admitted in oral argument that he failed to articulate

his *Monell* claim in his Complaint.  For these reasons, the Court finds that Plaintiff

failed to bring a *Monell* claim.

Notwithstanding these deficiencies, Plaintiff's response makes a "policy"

argument, citing to Sellenraad's deposition testimony that "[i]t is my understanding

that if [the misdemeanor complaint is] approved that it's my responsibility to

follow that through, yes."  (ECF No. 33, PageID.445 (citing ECF 33-7, PageID.518

[Sellenraad Dep. Tr., p. 50]).)  Further, the Court notes Sellenraad's testimony that,

if the "prosecutor is saying that there's sufficient probable cause to follow through

with that then, yes, that would be my responsibility [to sign the complaint]." (*Id*.) Sellenraad's lieutenant, Reinke, also clarified that he was unsure whether "it's a hard fact requirement [to sign a misdemeanor complaint] or if it's just a – that it's [an] officer's responsibility[.]" (ECF No. 33-10, PageID.570 [Reinke Dep. Tr., p. 9].) Plaintiff argues, without evidentiary support or citation, that this constitutes a "policy that requires police officers to sign criminal complaints *regardless of knowledge by that officer of actual innocence*." (ECF No. 33, PageID.446 (emphasis added).) However, Plaintiff only presents evidence of an officer's role in signing a criminal complaint after approval by the prosecutor, and Plaintiff does not present evidence of an "official policy" held by Northville Township that requires officers to sign criminal complaints *regardless of a person's perceived or actual innocence. See OPW Fueling Components v. Works*, No. 1:06cv187, 2007 WL 1406956, *8 (S.D. Ohio, May 9, 2007) (holding that a policy which instructed officers to complete a complaint form, present the complaint to a supervisor for review, and swear the officer to the truth and accuracy of the information is not an unconstitutional policy as a matter of law). And, in any case, even if there were such a policy, the facts of this case do not support a finding that it was the *cause* of Plaintiff being summoned to Court, as Officer Sellenraad made clear that "the reasons or factors that led [him] to sign the [criminal] complaint" were that he "took in good faith that the information, which I documented and provided to Mr.

18

Demopoulos, was reviewed and that it was his legal opinion that the charge was warranted." (*Id.* at PageID.431 [Sellenraad Dep. Tr., p. 69].) *See Novak v. City of Parma*, 33 F.4th 296, 307 (6th Cir. 2022) ("A prosecutor's independent charging decision typically breaks the causal chain for malicious-prosecution purposes.") In other words, it was his reliance on the legal opinion of the prosecutor, not on a policy, that caused him to sign the complaint.

Additionally, without citing any supporting authority, Plaintiff argues that there is *Monell* liability because Demopoulos "has indicated that if presented with the same set of facts, he would prosecute a defendant again." (ECF No. 33, PageID.447.) However, a prosecutor's continued prosecution of a valid law cannot create a "policy" for *Monell* liability. It is not the function of the prosecutor to question the laws once enacted by the Legislature; it is the function of the prosecutor to prosecute. *See Hanna v. Price*, 245 F. App'x 538, 548 n.2 (6th Cir. 2007) (quoting *People v. Wallace*, 408 N.W.2d 87, 92 (Mich. App. 1987) ("[I]t is not the function of the prosecutor to question the wisdom of the insanity defense once the Legislature has adopted it and defined it.") Moreover, "the decision on who is to be charged with a particular crime [in Michigan] is left to the sound discretion of the prosecutor[.]" *People v. Threlkeld*, 209 N.W.2d 852, 856 (Mich. App. 1973). The statute that Plaintiff fears will be the basis of a hypothetical, future prosecution remains on the books, has never been declared

19

unconstitutional and is presumed to be valid.  *See DeFillippo*, 443 U.S. at 38.  In any case, Plaintiff points to no Township policy that requires people to be prosecuted under this statute or these facts.

In sum, this Court grants summary judgment in favor of Defendants on Plaintiff's purported *Monell* claim, because Plaintiff failed to allege *Monell* liability in his complaint and, even if the Court recognized such a claim, Plaintiff failed to demonstrate the existence of a policy that deprives individuals of their constitutional rights.

### c.     Sellenraad and Qualified Immunity

Defendants argue that Sellenraad is entitled to qualified immunity (ECF No. 31, PageID.297), but Plaintiff disagrees (ECF No. 33, PageID.440).  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "A court required to rule upon the qualified immunity issue must consider" whether:  (1) "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right[;]" and, (2) "the right was clearly established."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Court may decide "which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Significantly, "it is clear that a police officer may be immune from liability under § 1983 even if it is later determined that probable cause for an arrest did not exist." *Saldana v. Garza*, 684 F.2d 1159, 1164 (5th Cir. 1982).

### i. Did Sellenraad's conduct violate a constitutional right?

Plaintiff contends that "[t]he first prong is met wherein Plaintiff has alleged that his free speech rights were violated when he was prosecuted and threatened with incarceration merely for exercising his [F]irst [A]mendment right to free speech." (ECF No. 33, PageID.441.) However, the evidence supports Defendants' assertion that *Sellenraad* did not violate Edison's rights. (ECF No. 31, PageID.298.) Preliminarily, at Edison's deposition, he characterized Sellenraad as "awesome" and "sounded like he knew what he was talking about[,]" "sounded fair[,]" and "sounded like a great police officer." (ECF No. 31-3, PageID.355 [Edison Dep. Tr., p. 53].) Edison went so far as to say "he was even polite[,]" although he also said Sellenraad was unprofessional during "the second phone call." (*Id*.)

More to the point, Plaintiff has not shown that "Sellenraad *personally* violated his rights." (ECF No. 31, PageID.300 (emphasis added).) "Once raised, the burden is on the plaintiff to demonstrate that the qualified-immunity defense is

21

unwarranted." *Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d
865, 871 (6th Cir. 2012) (citing *Roth v. Guzman*, 650 F.3d 603, 609 (6th Cir.2011).
"[T]o establish liability and to overcome a qualified immunity defense," Plaintiff
must show that "the violation was committed *personally* by the defendant."
*Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (emphasis in original).

The record demonstrates that Sellenraad worked with Kadaf and Edison
through their conflict, cataloged documents, and then submitted a full and fair
complaint to the prosecutor.  The accuracy of that submission has not been
disputed.  As Defendant points out, Sellenraad carried out his duties as a police
officer, while the Northville prosecutor, Demopoulos, who had the independent
authority to approve or deny a warrant request, found probable cause and
submitted a criminal complaint for Sellenraad's signature as the "complaining
witness."  (ECF No. 31, PageID.298; ECF No. 31-2, PageID.334; ECF No. 33-6.)
Here, the prosecutor is not a township employee; Demopoulos describes himself as
"an independent contractor."  (ECF No. 31-6, PageID.403 [Demopoulos Dep. Tr.,
pp. 7-8].)  Demopoulos has "independent authority to approve or deny" a warrant
request, and he "found" the statute under which Plaintiff was charged.  (ECF No.
31-6, PageID.404 [Demopoulos Dep. Tr., pp. 12-13].)  Moreover, when asked,
"[t]hat's why you authorized the charges because you believe those were
obscenities[,]"  Demopoulos responded:  "Yes and I believe it applied to the

malicious annoyance by writing statute which Northville adopted." (ECF No. 31-6, PageID.405 [Demopoulos Dep. Tr., p. 14]).  In this situation, Sellenraad was not tasked with the responsibility of finding probable cause or pursuing prosecution.

Plaintiff contends that several portions of Sellenraad's October 12, 2022 conversation with Kadaf involve Sellenraad explaining "the legal restraint on the government preventing it from targeting a person for expressing ideas." (ECF No. 33, PageID.438-439 (ECF No. 33-5 [Oct. 12, 2022 Trans. Video. Conv.]).) Notwithstanding what Plaintiff characterizes as "repeated and very strenuous admonitions by [NTPD] Officer Sellenraad to a determined Kadaf," Plaintiff contends that "Sellenraad was enlisted to sign the criminal Complaint . . . ." (ECF No. 33, PageID.438-439.)  Similarly, Plaintiff contends there is a factual dispute as to whether Sellenraad "enabled the prosecution by signing and swearing to the criminal complaint knowing that Edison had not violated [Mich. Comp. Laws §] 750.390." (*Id*., PageID.444.)  Although Plaintiff contends "Sellenraad's intent and motive are disputed factual issues . . . [,]" (*id*.), Sellenraad testified that, if a misdemeanor complaint is approved, it is his "responsibility to follow that through," *i.e.*, sign it (ECF No. 33-7, PageID.518 [Sellenraad Dep. Tr., p. 50]), and Defendant's lieutenant testified that "officers who are listed as complainants will sign complaints on cases that they're listed as complainant on . . . [,]" (ECF No. 33-10, PageID.570 [Reinke Dep. Tr., p. 9]).  Plaintiff does not point to additional

23

evidence showing that Sellenraad unduly influenced Demopoulos' legal opinion in identifying a statutory violation or in finding that there was probable cause. Plaintiff has not demonstrated the existence of a disputed, material fact question as to Sellenraad's personal involvement in the decision to prosecute Edison.

Plaintiff also contends Sellenraad knew, *before the prosecutor's review*, that "Edison had done nothing wrong[,]" pointing to the officer's testimony that "[u]se of profanity wouldn't make it inherently unlawful[,]" and "my opinion *at that time* was the direction I gave him was lawful and in accordance with my responsibilities, yes[,]" (ECF No. 31-7, PageID.421 [Sellenraad Dep. Tr., p. 27] (emphasis added); ECF No. 33-7, PageID.512).  (ECF No. 33, PageID.441-442.) Plaintiff further contends that Sellenraad "failed to communicate his concerns" to the prosecutor, pointing to Demopoulos' testimony that he could not "recall an officer saying something along the lines Greg I can't swear to this because I think you got it wrong."  (ECF No. 33, PageID.443 (citing ECF No. 33-9, PageID.548 [Demopoulos Dep. Tr., p. 18]).)

Plaintiff seems to suggest that Sellenraad still violated the Constitution because he had an independent responsibility to disagree with the Northville prosecutor in order to uphold Edison's constitutional right to free speech. (ECF No. 33, PageID.440-441.)  He provides no legal support for this position. However, "[o]nce probable cause is established, an officer is under no duty to

24

investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999). "An officer has probable cause 'when, at the moment the officer seeks the arrest, the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *Barton v. Martin*, 949 F.3d 936 950-51 (6th Cir. 2020) (quoting *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015)) (quotation marks omitted). Moreover, an officer will be entitled to qualified immunity "'if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of . . . the information possessed at the time by the arresting agent.'" *Barton*, 949 F.3d at 950 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)). And, as the First Circuit has reasoned, "when a police officer acts as an information provider, he may be obliged to reveal exculpatory facts . . . to a prosecutor or a judicial officer, but the Constitution imposes no parallel duty on a police officer to function as a decisionmaker in order to determine the dissipation *vel non* of probable cause or the actual innocence of a person in custody." *Brady v. Dill*, 187 F.3d 104, 114-15 (1st Cir. 1999) (internal citation omitted). While, in some cases, "there may be factual questions about the reasonableness of relying upon [the prosecutor's] assessment of probable cause, *e.g.*, whether the officers present could have

reasonably questioned [the prosecutor's *ability to neutrally assess* that there was probable cause to arrest . . . [,]" a court may determine that "under the totality of the circumstances, there was probable cause . . ." to prosecute and that, thus, the police officers "are entitled to qualified immunity on [the] false arrest claim." *Brown v. Knapp*, 75 F.4th 638, 649 (6th Cir. 2023) (emphasis added).[2] Here, relying on a prosecutor's legal opinion that a statute – of which Sellenraad had previously been unaware and which was presumed to be constitutional – had been violated, Sellenraad "could reasonably have believed" that summoning Plaintiff to answer criminal charges "was lawful, in light of the information possessed at the time[.]" *Barton*, 949 F.3d at 950 (internal citation omitted). Furthermore, no one has raised a question as to the prosecutor's neutrality, or suggested that he was lying or factually mistaken. Under the totality of the circumstances, this Court agrees that Officer Sellenraad did not have a constitutional duty to disagree with the prosecutor or investigate the finding of probable cause any further. In sum, the evidence does not show that Sellenraad's conduct violated a constitutional right.

> **ii. Was the constitutional right at issue clearly established at the time of Sellenraad's alleged misconduct?**

---

[2] Although several of the cases cited herein relate to situations where an arrest was made, in the case at bar, Plaintiff was summoned into criminal court, not arrested. (ECF No. 31-5, PageID.399; ECF No. 31-7, PageID.426, 428 [Sellenraad Dep. Tr., p. 49, 55].)

Having concluded the evidence shows Sellenraad *did not* violate Plaintiff's constitutional rights, the Court need not address whether the First Amendment right described by Plaintiff was "'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow,* 457 U.S. at 818). (ECF No. 33, PageID.441, 443.) *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."); *Pearson*, 555 U.S. at 236 (concluding that judges have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first ... [.]").

Nonetheless, and alternatively, the Court will also briefly analyze this case under the second qualified immunity prong, namely, whether "the right was clearly established." *Saucier*, 533 U.S. at 201. Here, even if the Court assumes that the somewhat obscure distinction between obscenity, vulgarity and offensive language and was clearly established, the law recognizes that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly" misapply even established law and that "that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held

27

personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable [internal citations omitted] will the shield of immunity be lost.") While "[p]olice officers can be expected to have a modicum of knowledge regarding the fundamental rights of citizens[,]" they "cannot be held to . . . a legal scholar's expertise in constitutional law." *Saldana*, 684 F.2d at 1165. *See also Babb v. Dorman*, 33 F.3d 472, 478 (5th Cir. 1994). "Law enforcement officers are not expected to be constitutional scholars, or to act as legal technicians with the luxury of time and study in deliberating and reviewing their every action as judges do." *United States v. Garcia*, 644 F. Supp. 3d 474, 492 (N.D. Ind. 2022).

"The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Sellenraad's alleged mistake of law (or mixed mistake based on mixed questions of law and fact) – initially believing that Plaintiff's actions did not rise to the level of criminality, then later deferring to the prosecutor's judgment regarding an applicable statute, probable cause and obscenity – does not subject him to liability. "The principles of qualified immunity shield an officer from personal liability

when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244. *See also Nemeckay v. Rule*, 894 F. Supp. 310, 317 (E.D. Mich. 1995) (Rosen, J.) ("[I]n determining whether qualified immunity will be accorded, we do not expect officers to be constitutional scholars, able to make fine, academic distinctions about how the law may apply to the circumstances they are confronting while they are in the heat of an arrest."). In the instant matter, although Sellenraad submitted information to the prosecutor and signed the misdemeanor complaint as the "complaining witness," he is entitled to qualified immunity even if there was a mistake of law. As Judge Suhrheinrich once so aptly put it, "The whole point of qualified immunity is to give officials 'breathing room to make reasonable but mistaken judgments.' We're the legal experts, after all, not them." *Sevenski v. Artfitch*, No. 21-1391, 2022 WL 2826818, at *7 (6th Cir. July 20, 2022) (Suhrheinrich, J., concurring in part) (quoting *Ashcroft*, 563 U.S. at 743).

In the end, "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. In this case, there is no evidence that Officer Sellenraad "exercise[d] power irresponsibly," even if, *arguendo*, he was mistaken as to the law. *Id*. Plaintiff has not met his burden "to demonstrate that the qualified immunity defense is unwarranted[,]" *Sutton*, 700

F.3d at 871, nor shown that Sellenraad's duties were carried out "unreasonably." The undisputed factual record shows that Officer Sellenraad proceeded cautiously and in reliance on the prosecutor's legal research, opinion and decision to charge. He is entitled to qualified immunity.

### 2. State law claims

Considering the Court's conclusion that Defendants are entitled to summary judgment on Plaintiff's federal constitutional claim – *i.e.*, Plaintiff's sole claim as to which this Court has original jurisdiction, this Court may decline to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3). However, when deciding whether to exercise jurisdiction, the court "should consider such factors as comity, judicial economy, convenience, and fairness…as well as the avoidance of unnecessarily deciding state law." *Fossyl v. Milligan*, 317 F. App'x 467, 473 (6th Cir. 2009). "Residual jurisdiction should be exercised only in cases where interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply,* 465 F.3d 719, 728 (6th Cir. 2006). In the instant case, I find that the interest of judicial economy, convenience, and avoiding multiplicity of litigation outweigh any concern over needlessly deciding state law issues and weight in favor of exercising supplemental jurisdiction. The Court will, therefore,

continue to exercise supplemental jurisdiction over the remaining state law claims and decide them here.

### a.   Violation of Article 1, § 5 of the Michigan Constitution (Count II)

Edison also alleges that Sellenraad and Northville Township violated Plaintiff's right to freedom of speech under the analogous state constitutional provision:  "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press."  MI CONST Art. 1, §  5.  (*See* ECF No. 1, ¶¶ *48-50*.)

Defendants argue that Plaintiff "cannot prove his constitutional claim," namely because there is "no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee."  *Jones v. Powell*, 612 N.W.2d 423, 426 (Mich. 2000) (referencing *Smith v. Dep't of Public Health,* 410 N.W.2d 749 (1987)).  "A plaintiff may sue a municipality in federal or state court under 42 U.S.C. § 1983 to redress a violation of a federal constitutional right[,]" *see Monell*, 436 U.S. at 690, n. 54, and, "a plaintiff may bring an action against an individual defendant under § 1983 and common-law tort theories."  *Jones*, 612 N.W.2d at 427.  (ECF No. 31, PageID.300.)

Plaintiff fails to address his Michigan Constitution claim in his response. (*See* ECF No. 33; ECF No. 38, PageID.592.)  Plaintiff's failure to respond to an argument on summary judgment constitutes a waiver of the claim.  *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment").  *See also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'") (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)).  Additionally, at oral argument, Plaintiff's counsel agreed that there are no damage claims available under the Michigan Constitution, and that Count II of the complaint may be "considered waived."  Therefore, summary judgment is **GRANTED** in Defendants Sellenraad and Northville Township's favor as to this claim.

### b.   Malicious Prosecution (Count III)

Finally, Plaintiff alleges a count of malicious prosecution "against . . . Sellenraad."  (ECF No. 1, ¶¶ 51-57.)  The Michigan statute under which Count III of the complaint is pleaded states, in pertinent part:

> Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, shall be liable to the person so arrested, attached or proceeded against, in treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred by him; and shall be liable to the person in whose name such arrest or proceeding was had in the sum of $200.00 damages….

Mich. Comp. Laws § 600.2907. (*See also* ECF No. 1, ¶ 54.) However, "the statute does not create a cause of action for abuse of process independent of the common law." *Peisner v. Detroit Free Press*, 242 N.W.2d 775, 777 (Mich. App. 1976). Furthermore, MCL 600.2907 "only applies to remedy fraudulently filed 'straw-party' suits," without the named person's consent. Such "straw-party" suits are "no longer as prevalent[.]" *Camaj v SS Kresge Co*, 393 NW2d 875, 879-880, 878 (Mich. 1986). "Malicious prosecution actions generally have their basis in early common law." *Id.* at 877.

Even if the Court looks beyond the inapplicable statute and proceeds under the common law, Defendants argue Plaintiff "cannot show malicious prosecution." (ECF No. 31, PageID.301-303.) To prevail on a claim of malicious prosecution, Plaintiff must prove: "(1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in

instituting the criminal claim other than bringing the offender to justice."

*Matthews v. Blue Cross & Blue Shield of Michigan*, 572 N.W.2d 603, 609–10

(Mich. 1998). In this case, only three of these elements are in dispute.[3]

### i.    Initiated (or maintained)

Plaintiff alleges that Officer Sellenraad "instituted and initiated the

allegations of criminal activity against Plaintiff without probable cause and with

malice." (ECF No. 1, ¶ 52.) At Plaintiff's deposition, he was asked, "[s]o it was

Fadie who initiated the allegations of criminal activity then, wasn't it?" (ECF No.

31-3, PageID.356 [Edison Dep. Tr., p. 55].) Plaintiff answered:

> Well, if you think about the word initiated, the word initiated to get
> something started, the allegations of criminal activity, I think the
> complaint is the initiation of criminal activity. So the criminal
> activity, because that not only had to be signed by the prosecutor, I'm
> sorry, by the officer, then the prosecutor has to sign it. So that is the
> initiator, he's the initiator of these allegations that I broke the law. So
> in that context, Fadie has nothing to do with this.

(*Id*. [p. 55-56].) (ECF No. 31, PageID.301). In other words, Plaintiff points to

Officer Sellenraad's and/or Prosecutor Demopoulos' involvement in the

recommendation to issue complaint and/or the complaint itself (*see* ECF No. 31-2,

PageID.333-335) as having initiated the criminal prosecution against him.

---

[3] While Defendant argues that Plaintiff abandoned his malicious prosecution claim
(ECF No. 38, PageID.592), Plaintiff does address the issue in his response (ECF
No. 33, PageID.444-445).

However, when asked whether the NTPD's warrant request recommends that charges be issued, Demopoulos testified that "they don't recommend it. They – they leave that up to me.  They … send it over to me like these might be the charges will you consider it?  And I have independent authority to approve or deny."  (ECF No. 31-6, PageID.404 [Demopoulos Dep. Tr., pp. 12-13]; ECF No. 33-9.)  When asked whether the warrant request listed Mich. Comp. Laws § 750.390, Demopoulos stated:  "[T]hat's my handwriting and I found that statute."  (*Id*. [p. 13].)  On Demopoulos' recommendation to issue a criminal complaint, he signed his name to the statement:  "I find there is probable cause to believe the following violation of Northville Township ordinance was committed[.]"  (ECF No. 31-2, PageID.333.)  The misdemeanor complaint was then "authorized" by Demopoulos, with Sellenraad signing as a "complaining witness."  (*Id*. at PageID.334; ECF No. 33-6.)[4]

As shown through Demopoulos' testimony, Sellenraad had very peripheral "involvement" in the decision to prosecute and the statutory provision under which to charge.  Instead, Sellenraad merely signed the complaint as to the truth of "its contents[.]"  (*Id*.)  The record is clear that Sellenraad supplied only factual information; the prosecutor determined whether there was "probable cause to

---

[4] Plaintiff's counsel acknowledged at oral argument that his client has a bigger axe to grind with Demopoulos, but that he was not sued because he has "absolute immunity."

believe" a violation of law "was committed[.]"  (*Id.*, PageID.333.)  Plaintiff has not

shown that Sellenraad "initiate[d] or procure[d] the proceedings without probable

cause and primarily for a purpose other than that of bringing an offender to

justice[.]"  Restatement (Second) of Torts § 653 (1977).  "The giving of the

information or the making of the accusation, however, does not constitute a

procurement of the proceedings that the third person initiates if it is left to the

uncontrolled choice of the third person to bring the proceedings or not as he may

see fit."  (*Id.*, Comment (d).)  Moreover, there is nothing malicious about

presenting an accurate factual account for prosecutorial review, nor do Sellenraad's

actions amount to an *initiation* of prosecution.  Notably, the criminal complaint

itself identifies Demopoulos, not Sellenraad, as the "Prosecuting Official."  (ECF

No. 31-2, PageID.334.)

The Sixth Circuit has held that a police officer cannot be held liable for

malicious prosecution when he did not make the decision to prosecute, or indeed,

is not the "Prosecuting Official."  (ECF No. 31-2, PageID.334; ECF No. 33-6.)

*Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002) (officer "cannot

be held liable for malicious prosecution when he did not make the decision to

prosecute . . . .").  *See also McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th

Cir. 2005) (quoting *Skousen,* 305 F.3d at 529, and concluding, "McKinley presents

no evidence suggesting that defendants conspired with, influenced, or even

participated in[] Prosecutor Knowling's decision to bring charges against him.");

*Novak,* 33 F.4th at 307 ("A prosecutor's independent charging decision typically

breaks the causal chain for malicious-prosecution purposes.").  In sum, Sellenraad

cannot be held liable for malicious prosecution when he had no authority to initiate

prosecution and there is no record of him influencing Prosecutor Demopoulos'

decision, beyond the mere presentation of truthful information.

### ii.        Probable cause

Defendants contend that probable cause existed "by virtue of the fact that

Demopoulos charged Edison."  (ECF No. 31, PageID.301.)  Demopoulos signed

the Recommendation to Issue Complaint, confirming that "after having reviewed

the report and the investigation on the above referenced matter," he found there

was "probable cause to believe" a violation of Northville Township Ordinance 67

Section 54 (adopting Mich. Comp. Laws § 750.390) "was committed[.]"  (ECF No.

31-2, PageID.333.)

In his response, Plaintiff argues that Sellenraad "knowingly signed and

swore to a criminal complaint" against "a man he knew to be innocent" of the

statutory charge that was brought. (ECF No. 33, PageID.444.)  However, the

undisputed record shows that Sellenraad was not even aware that Mich. Comp.

Law § 750.390 existed.  After returning the recommendation to issue complaint to

Sellenraad, Demopoulos noted that "Officer Sellenraad … was kind of surprised

that there was a statute like this." (ECF No. 31-6, PageID.404 [Demopoulos Dep. Tr., p. 13]; ECF No. 33-9.) Demopoulos testified that he found the Michigan statute and relayed his decision to prosecute under the specific statute back to Sellenraad. (*Id*.) As established at the motion hearing, Sellenraad never testified that he disagreed with the prosecutor, signed the misdemeanor complaint despite his disagreement with the prosecutor, or believed Edison was innocent under the Michigan statute after obtaining a legal opinion. The decision to prosecute came solely from Demopoulos' legal determination, upon which Sellenraad relied. No evidence has been pointed out to the Court demonstrating that, at the moment of signing, Sellenraad disagreed with the prosecutor's charging decision.

Michigan courts have long held that "the advice and concurrence of a public prosecutor is not a good defense to an action for malicious prosecution *unless* it appears that the defendant fully and fairly disclosed to such officer everything within defendant's knowledge which would tend to cause or to exclude belief in plaintiff's guilt[.]" *Webster v. Fowler*, 50 N.W. 1074, 1075 (Mich. 1891) (emphasis added). *Cf. Kinkus v. Village of Yorkville, Ohio*, 289 F. App'x 86, 91 (6th Cir. 2008) (unpublished) (an officer "cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor is truthful.").

Undoubtably, officers may be subject to liability when they swear to information that they know to be false or when they neglect to include exculpatory information. *Yancey v. Carroll Cnty., Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989) ("an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant."). However, Michigan courts have repeatedly held that "*the only situation* in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause." *King v. Arbic,* 406 N.W.2d 852, 858 (Mich. App. 1987) (quoting *Belt v. Ritter,* 171 N.W.2d 581, 586 (Mich. App. 1969)) (emphasis added). *See also Markowicz v. Pappas*, 300 N.W.2d 713, 716 (Mich. App. 1980) ("Where the complaining witness has fully, fairly, and in good faith stated all the material facts within his or her knowledge to the prosecutor and the prosecutor proceeds to recommend a warrant, probable cause is established, thereby barring plaintiff's right to recover.") (citing cases); *Matthews,* 572 N.W.2d at 610 (a private person, who institutes a prosecution without probable cause, may avoid liability on the ground that he acted on the advice of the prosecutor after a full and fair disclosure of the material facts). At Sellenraad's deposition, when asked if he stood by his decision to sign the complaint (see ECF No. 31-2, PageID.334; ECF No. 33-6), he responded: "Yes.

Everything that was provided regarding information collected by [me] or Mr.

Demopolous [sic] to make his decision on whether or not to make a charge and

what charge should be issued, everything that was provided was true." (ECF No.

31-7, PageID.428 [Sellenraad Dep. Tr., p. 56].)  Sellenraad also testified, with

respect to his response to an interrogatory concerning the "specific reasons or

factors" that led him to sign the complaint, that he "took in good faith that the

information, which [he] documented and provided to Mr. Demopolous [sic], was

reviewed and that it was his legal opinion that the charge was warranted." (ECF

No. 31-7, PageID.431 [Sellenraad Dep. Tr., p. 69]).  (ECF No. 31, PageID.302.)

The Sixth Circuit and the Michigan courts are in agreement.  A police

officer is not subject to liability for malicious prosecution when the officer made a

full and fair disclosure to the prosecutor.  *Combs v. City of Detroit*, No. 06-12678,

2008 WL 11472185, at *4 (E.D. Mich. June 19, 2008) (Battani, J.).  As shown

through the exhibits in this case, Officer Sellenraad's complaint contains truthful

accounts of the facts in Edison's case.  (ECF No. 33-7, PageID.519 [Sellenraad

Dep. Tr., p. 56].)  Sellenraad provided the prosecutor with writings exchanged

between Edison and Kadaf, as well as the incident report.  (ECF No. 31-6,

PageID.404 [Demopoulos Dep. Tr., p. 10-11]; ECF No. 33-9.)  As acknowledged

at the hearing, Sellenraad made a full and fair disclosure to the prosecutor and

submitted no inaccurate information.  Therefore, Sellenraad is entitled to summary

judgment on Plaintiff's state law malicious prosecution claim.

### iii.      Malice

Defendants argue that Plaintiff "has not demonstrated that Sellenraad acted

with malice[.]"  (ECF No. 31, PageID.302-303.)  "To sustain an action for

malicious prosecution[:]

> . . . [i]t must be shown that defendant acted maliciously.  Malice
> requires that the proceedings be willful, wanton, or reckless, or
> against the accuser's sense of duty; furthermore, they must be for ends
> which he must know are wrong and against public policy.  Both
> elements, malice and want of probable cause, must be present to
> sustain the action.  When these elements are alleged in the complaint,
> but there is no factual proof to support them, they are in themselves
> insufficient as they amount to mere conclusions.

*Sottile v. DeNike*, 174 N.W.2d 148, 150 (Mich. App. 1969).

In his response, Plaintiff focuses on Sellenraad's signature on and swearing

to the criminal complaint "against a man he knew to be innocent," suggesting that

Sellenraad did not present "the entire scenario to Demopoulos," and failed to

"articulate his reservations about the prosecution of Edison . . . ."  (ECF No. 33,

PageID.444-445.)  However, for the reasons expressed above, Officer Sellenraad's

decision to rely upon the prosecutor's determination of probable cause and sign to

the truth of the facts in the complaint as the complaining witness – under a statute

which is presumed to be constitutional – does not appear to be "wrong and against

public policy."  *Sottile*, 174 N.W.2d at 150.  Further, there has been no evidence to

41

show that Sellenraad had any willful, wanton or ill intent; to the contrary, the

undisputed evidence shows that Sellenraad proceeded cautiously – *e.g.*, his alleged

September 23, 2022 opinion (*see* ECF No. 33-3, PageID.457 [Trans. Sept. 23,

2022 Video Convers.]) – and resisted prosecution until being advised by

Prosecutor Demopoulos as to the existence of the statute (around October 20 or

October 21, 2022) that the information submitted demonstrated a statutory

violation.  Sellenraad is entitled to summary judgment on Plaintiffs' malicious

prosecution claim.

## II.    ORDER

For the reasons explained above, Defendants Northville Township and

Officer Sellenraad's motion for summary judgment (ECF No. 31) is **GRANTED**,

and judgment will be entered in Defendants' favor, there being no claims

remaining against any party.

**IT IS SO ORDERED.**

Dated:  September 30, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE